UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNE M. DUPONT             Case No. 18-11310

         Plaintiff,             Marianne O. Battani
    v.                           United States District Judge

COMMISSIONER OF SOCIAL       Stephanie Dawkins Davis
SECURITY,                    United States Magistrate Judge

         Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 14)**

## I. PROCEDURAL HISTORY

### A. Proceedings in this Court

On April 27, 2018, plaintiff Jeanne M. Dupont filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision that Dupont's disability ended as of July 20, 2016. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkts. 12, 14).

### B. Administrative Proceedings

On February 12, 2015, Dupont filed an application for period of disability and disability insurance benefits, along with an application for supplemental

security income on July 7, 2015, alleging disability beginning on July 27, 2012. (Tr. 11).[1]  Dupont's claims were initially denied on August 17, 2015.  (Tr. 15). She requested a hearing and appeared on March 9, 2017 before Administrative Law Judge ("ALJ") Paul W. Jones.  (Tr. 36-70).  In a decision dated April 18, 2017, the ALJ found Dupont disabled as of July 27, 2012 and entitled to benefits based on her physical impairments.  (Tr. 11-22).  In that same decision, the ALJ determined that Dupont's disability ended on July 20, 2016.  *Id*.  Dupont requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 2, 2018, denied her request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** the case to the Commissioner for further proceedings pursuant to Sentence Four.

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Dupont was born in 1971 and was 41 years old on the disability onset date. (Tr. 20).  She has a high school education and past relevant work as a dispatcher and dancer.  (Tr. 17).  Dupont lives with her daughter and stopped working after an auto accident in July 2012.  (Tr. 216, 660, 921).

In view of her determination that Dupont was disabled for a closed period, the ALJ undertook to "determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  20 C.F.R. § 416.994(b).  The ALJ ascertains medical improvement by utilizing an eight-step sequential evaluation that largely mirrors the traditional five-step sequential disability evaluation.  20 C.F.R. § 416.994(b)(5)(i)-(viii); 20 C.F.R. § 404.1594(f)(1-8).  At step one, the ALJ determined that Dupont has not engaged in substantial gainful activity since July 27, 2012.  (Tr. 14).  At step two, the ALJ determined that beginning July 20, 2016, Dupont did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Tr. 18).  At step three, the ALJ found that medical improvement had occurred as of July 20, 2016.  (Tr. 19).  The ALJ determined that Dupont did not have new impairments since July 20, 2016 and thus, her severe impairments were the same as those from July 27, 2012 through July 19, 2016

3

(right foot fracture status-post three surgeries, right femur/hip fracture status-post three surgeries, and complex regional pain syndrome).  (Tr. 14, 18).  The ALJ found that Dupont's medical improvement was related to the ability to work because there was an increase in her RFC. (Tr. 19).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") to perform sedentary work with a sit-stand option, at will.  (Tr. 19).  The RFC for the closed period of disability was identical to the post-improvement period RFC, except that it included the additional, work-preclusive restriction that she could remain on task only 75% of a regular work day.  (Tr. 15).  Next, the ALJ concluded that, as of July 20, 2016, Dupont could perform her past relevant work as a dispatcher.  (Tr. 20). The ALJ found that Dupont's disability ended on July 20, 2016 and she had not become disabled again since that date.  (Tr. 21).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a

claimant does not obtain relief during the administrative review process, the

claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d

535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.

Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a

reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point that she is able to perform substantial gainful activity.  42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 764 (6th Cir.2007). Whether an individual is entitled to continued benefits depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so,

whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process. *See Kennedy,* 247 Fed. Appx. 764-65. The first part of the process focuses on medical improvement. *Id.* at 764. The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Id.* at 764–65 (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s).... 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b) (l)(i). If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities....'" *Kennedy,* 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. Appx. 358, 361 (6th Cir.2001).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy,* 247 Fed. Appx. at 765. The implementing regulations for this part of the evaluation incorporate

many of the standards set forth in the regulations that govern initial disability

determinations.  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f) (7)).  The difference

is that "the ultimate burden of proof lies with the Commissioner in termination

proceedings."  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v.*

*Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).  An increase in the claimant's

functional capacity will lead to a cessation of benefits only if, as a result, the

claimant can perform her past work or other work that exists in significant numbers

in the national economy.  20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended,

the Commissioner uses the eight-step sequential evaluation process outlined in 20

C.F.R. §§ 404.1594(f)(l)-(8) and 416.994(f)(l)-(8).  *Kennedy*, 247 Fed. Appx. at

764.  The steps are:

> (1) Are you engaging in substantial gainful activity?  If
> you are ... we will find disability to have ended....
>
> (2) If you are not, do you have an impairment or
> combination of impairments which meets or equals the
> severity of an impairment listed in appendix 1 of this
> subpart?  If you do, your disability will be found to
> continue.
>
> (3) If you do not, has there been medical improvement as
> defined in paragraph (b)(1) of this section?....
>
> (4) If there has been medical improvement, we must
> determine whether it is related to your ability to do work
> in accordance with paragraphs (b)(1) through (4) of this
> section....

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply....

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe....

(7) If your impairment(s) is severe, ... we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment....  If you can, we will find that your disability has ended.  If you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

There is no presumption of continuing disability.  *Kennedy*, 247 Fed. Appx. at 764 (citing *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 286–287 n. 1 (6th Cir. 1994)).  Instead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work.  *Id.*  If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the

matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

C.     Analysis and Conclusions

Dupont contends that the medical evidence post-dating July 19, 2016 does not support the ALJ's conclusion of medical improvement.  Dupont received acupuncture treatment after July 19, 2016 (Tr. 1604, 1597, 1596), and received Lyrica, Cymbalta, Norco, Lidoderm patches, and physical therapy for her CRPS. (Tr. 1630-1632).  Dupont received regular nerve blocks dating back to 2013, which continued into 2017.  (Tr. 1621).  At her June 2, 2016 appointment, the doctor indicated she was unable to work and required case management, replacement services, transportation to medical appointments, attendant care.  Further,  she was not able to return to work from June 2, 2016 and she required attendant care 12 hours a day, 7 days per week from June 2, 2016 to September 2, 2016 for self-care needs, including bathing and dressing.  (Tr. 1612-1614).  Additionally, through the same period of time, Dupont was receiving continuous physical therapy exercises which included bicycle riding.  (Tr. 1561-1593).  Dupont was also receiving soft tissue massage twice per week.  (Tr. 1614).

Dupont maintains that this "intense treatment" supports her claim of continuing disability, not an improvement that lead to an increased capacity for work.  Dupont compares her circumstances to those in *Miller v. Comm'r of Soc.*

*Sec.*, 811 F.3d 825 (6th Cir. 2016), in which the Court of Appeals held that

substantial evidence did not support the ALJ's determination that the claimant

could conduct work activities on a sustained basis because the ALJ did not

sufficiently establish that the claimant's social activities, as drawn from isolated

portions of the record, allowed him to function independently on a sustained basis.

According to Dupont, the ALJ's reliance on her bicycle riding for a short time, as

prescribed, suffers from the same deficiency.

   The Commissioner describes Dupont's argument as a mere invitation to

reweigh the evidence, which he says is not permissible.  In addition, the

Commissioner contends that the evidence Dupont relies on fails to rebut the ALJ's

finding of medical improvement.  According to the Commissioner, most of those

records cited by Dupont pertain to her condition during the period the ALJ

adjudicated her disabled.  (Tr. 1534-1555).  The doctor's report from July 2016

supports the ALJ's finding that Dupont's condition had medically improved

because Dr. Doherty observed that she only had mild tenderness on palpation over

her right IT band, she could actively flex her right hip without pain, and her motor

and sensory function were generally intact.  (Tr. 1535).  Dupont's physical therapy

records from July and August show that she was doing better, had decreased pain,

and was able to take multiple 6-8 mile bicycle rides in that time frame.  (Tr. 1568,

1571, 1574, 1577, 1583, 1586, 1589).  The Commissioner further argues that the

records from Dr. Master-Hunter in July 2016 and Dr. Bitar's records from June 2016, September, and December 2016 do not rebut the finding of medical improvement. (Tr. 1596-1600; 1608-1614). The Commissioner further points to notes of improvement from Dr. Rastogi's July 2016 notes. (Tr. 1628-1630). And, the Commissioner says that Dupont's March 2017 MRI does not establish any additional or worsening functional limitations. (Tr. 1657-1658). Accordingly, the Commissioner maintains that Dupont failed to demonstrate that the ALJ's determination was based on isolated instances of medical improvement and she failed to identify any objective evidence that contradicts the ALJ's finding or establishes that her condition subsequently worsened.

The core dispute in this case is whether the ALJ's analysis of medical improvement leading to the conclusion that Dupont's RFC renders her able to work, is legally correct and supported by substantial evidence. As explained in detail in *Jackson v. Comm'r of Soc. Sec.*, 2018 WL 5316028, *2-3 (E.D. Tenn. Oct. 9, 2018), report and recommendation adopted, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018), at the third step of the eight-step process, the ALJ must determine whether there has been a "medical improvement." 20 C.F.R. § 404.1594(f)(3). "Medical improvement" is defined as:

> any decrease in the medical severity of your
> impairment(s) which was present at the time of the most
> recent favorable medical decision that you were disabled
> or continued to be disabled. A determination that there

> has been a decrease in medical severity must be based on
> changes (improvement) in the symptoms, signs and/or
> laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1).[2]  Unlike initial disability determinations, "the ultimate

burden of proof lies with the Commissioner in termination proceedings." *Kennedy*

*v. Astrue*, 247 Fed. Appx. 761, 765, 768 (6th Cir. 2007) (citing 20 C.F.R.

§ 404.1594(b)(5), (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991))

(reversing and remanding because the Commissioner did not satisfy her burden of

establishing medical improvement).  Indeed, the Commissioner's burden is

twofold; she must  prove both that "the severity of a claimant's impairment has

medically improved, and that the claimant is now able to perform substantial

gainful activity." *Delacotera v. Colvin*, 2017 WL 169104 (E.D. Tenn. Jan. 1,

2017) (quoting *Little v. Comm'r of Soc. Sec.*, 2014 WL 656737, at *4 (S.D. Ohio

Feb. 19, 2014) (citing 42 U.S.C. § 423(f)(1); *Kennedy*, 247 Fed. Appx. at 764-65).

To determine whether the claimant's impairments have "improved," the ALJ

uses the comparison point decision date, which is defined as "the most recent

---

[2] The same "medical improvement" standard applies when an ALJ finds that there was a closed period of disability. "In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled." *Gillespie v. Comm'r. of Soc. Sec.*, 2010 WL 4063713, at *3 (E.D. Mich. Oct. 14, 2010) (citing *Long v. Sec'y of Health & Human Serv.*, 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994)).  "If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end his benefits." *Ross OBO K.R. v. Comm'r of Soc. Sec.*, 2017 WL 3085351 (S.D. Ohio July 20, 2017) (citing *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 839-40 (6th Cir. 2005).

favorable medical decision that you were disabled or continued to be disabled," as a

reference point. *Jackson*, at *3 (quoting 20 C.F.R. § 404.1594(b)(7)).  If at the time

of the disability review, a claimant's impairments are less severe than they were at

the comparison point decision date, then a medical improvement has occurred, and

the ALJ must proceed to step four and determine whether the improvement is related

to the claimant's ability to work.  *Jackson*, at *3 (citing 20 C.F.R. § 404.1594(f)(4)).

This requires the ALJ to assess the claimant's current RFC and compare it to her

RFC at the time of the comparison point decision date.  *Jackson*, at *3.

The ALJ found Dupont disabled through July 19, 2016.  He relied in large

part on the treating records relating to Dupont's various surgeries and follow up

treatments throughout the disabled period.  He specifically found that her

statements in her function report that her conditions affected her ability to

remember, concentrate, and do postural activities was supported by the medical

evidence of record.  (Tr. 16).  The ALJ determined that medical improvement

occurred on July 20, 2016 for the following reasons:

> Claimant was noted to ride a bike pain free without pain
> the next day and reported stronger leg in July 2016.  She
> reported she rode a bike for six mile[s] without
> complaints, in August 2016 (20F).  Pain management
> physician, E. John, MD, noted, in November 2016,
> claimant's cane use and found she had antalgic gait and
> right hip popping but no pain with motion and normal
> legs (11F).

(Tr. 19).  Notably, Dupont's ability to ride a bicycle for 6-8 miles was short-lived and followed by the need for yet a seventh surgery.  More specifically, by the time of her hearing, she was no longer riding a bike due to an apparently new complication involving the iliotibial (IT) band of her right leg which was determined to require surgery.  Hence, reliance on Dupont's brief bike-riding stint to support a finding of medical improvement is a tenuous proposition in the face of her need for yet another surgery (Tr. 1608) combined with her need for case management, placement services, transportation to medical care, and attendant care 8 hours per day 7 days a week to help with activities of daily living such as bathing and dressing, up through February 15, 2017.  (Tr. 1609).  The same is true of a single occasion on which she had no pain with motion.  It is important to remember that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of HHS*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp v. NLRB*, 340 U.S. 474, 488 (1951)).  The need for additional surgery and Dupont's continuing need for fairly comprehensive personal care assistance greatly detracts from the evidence cited by the ALJ and that advanced by the

Commissioner to support a finding of medical improvement.  Further, as explained

below, Dr. John's note is but one notation amidst many documenting Dupont's

continued pain and treatment.

As explained in *Campbell v. Comm'r of Soc. Sec.*, 2011 WL 2160460 (E.D.

Mich. June 1, 2011), it was reversible error where the ALJ did not compare the

findings in the report relied on to find the claimant no longer disabled with the

evidence from when the claimant was found disabled.  Had the ALJ done so in

*Campbell*, she would have noted that many of the findings relied on for the finding

of non-disability were the same as those when the claimant was found disabled.

*Id*. at *5.  Accordingly, the ALJ did not undertake the required comparison set

forth in *Kennedy*.  *Id*. at *4-5.  Similarly, the ALJ's analysis here did not undertake

such a comparison.  For instance, the decision does not account for Dupont's

continuing need, after July 2016, for physical therapy, acupuncture, attendant care

services, massage therapy, and pain injections to manage her pain and conditions.

In addition, after July 2016, Dupont continued to require a regimen of medications

to combat her pain including Cymbalta, Lyrica, Ativan, Flexeril, and Norco, as

her pain level continued to be consistently high after July 2016, at the same levels

seen during the disabled period.  (Tr. 1610, pain level 7/10 on 9/19/16; Tr. 1608,

pain 7/10 on 12/19/16; Tr. 1628, on 7/13/16, pain level between 3/10 and 7/10 in

last week).  In reviewing the evidence the ALJ relied on to find medical

improvement, the Court does not re-weigh the evidence, but because the burden rests with the Commissioner to show medical improvement supported by substantial evidence of record, it is the Court's task to assess whether the Commissioner has in fact met his burden. *Ryan v. Comm'r of Soc. Sec.*, 2018 WL 1096464, *9 (E.D. Mich. Feb. 8, 2018) (Patti, M.J.), report and recommendation adopted, 2018 WL 1089600 (E.D. Mich. Feb. 26, 2018) (Murphy, J.).

Even if the bicycle rides and Dr. John's report were deemed sufficient to substantiate a medical improvement "based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [plaintiff's] impairment(s)," *Kennedy*, 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(1)), such a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision ***and*** an increase in your functional capacity to do basic work activities ..." *Id*. (quoting 20 C.F.R. § 404.1594(b)(3) (emphasis added)). As explained in *Kennedy*, a decision in which the Court of Appeals determined that the ALJ's medical improvement analysis was not supported by substantial evidence:

> … no effort was made by the ALJ nor any medical source to ***compare*** her abilities or her limitations to those possessed at the time of the initial determination. Medical improvement is any decrease in the medical severity of the claimant's impairment which was present at the time of the prior favorable decision. Medical improvement "is

> determined by a comparison of prior and current medical
> evidence ...” 20 CFR § 404.1594(c)(1). As noted above,
> Kennedy appears to have had essentially the same
> functional abilities [in] 1995 as these noted by the ALJ in
> support of his finding of medical improvement. The
> conclusions of the Commissioner and the ALJ that these
> functional abilities indicate medical improvement is not
> supported by substantial evidence and is in fact contrary
> to the evidence in the record.

*Kennedy*, 247 Fed. Appx at 765 (emphasis in original).  Here, the ALJ's first RFC

indicated that due to her conditions, Dupont would be off-task 25% of the time,

rendering her unable to work.  (Tr. 15).  In the second RFC, the ALJ eliminated

this limitation entirely.  However, the ALJ's opinion does not analyze the *degree* to

which Dupont improved at all.  In fact, the opinion contains no analysis as to the

suggestion that Dupont's improvement from the baseline indicates an ability to

work.  For example, even if Dupont's pain, range of motion, and endurance

improved, the ALJ does not explain how that improvement relates to the ability to

work or if the degree to which she would be off-task had improved.  As set forth

above, Dupont's pain level continued to be quite high, she continued to require a

full complement of medications and therapies and required further surgery.

Fundamentally, what is missing from the ALJ's decision on medical improvement

is any discussion of a ***comparison*** of Dupont's abilities and limitations as of July

20, 2016 to those present before that date, based on the medical evidence

purporting to show medical improvement.  *See Kennedy*, *supra*.  That is, the ALJ

does not make a logical or evidential connection between the symptoms, signs and/or laboratory findings showing medical improvement and an increase in Dupont's functional capacity to perform work – more specifically, that she would no longer be off-task 25% of the day. Thus, the ALJ's medical improvement analysis is not supported by substantial evidence. Given the foregoing conclusions, the undersigned need not address the remaining points of error raised by Dupont.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** the case to the Commissioner for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge